

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00165-CR

_____

THE STATE OF TEXAS, Appellant

V.

PAT RAY WILSON, JR., Appellee

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. 44861

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

While Corporal William Abbott of the Bonham Police Department worked the evening shift December 25, 2009, alone in his police vehicle, it appeared to Abbott that a vehicle driven by Pat Ray Wilson, Jr., emerged from the parking lot of a local bar, waited for a different police vehicle on the public road to go by, crossed the public road into the entry drive of a local automobile dealership—not then open for business—and remained there for several minutes, before pulling forward and back a number of times, re-entering the public road, and proceeding in a direction to leave Bonham. Abbott followed Wilson's vehicle. Abbott testified that, after he saw Wilson's vehicle cross the fog line, he activated his emergency lights and stopped Wilson's vehicle. Abbott arrested Wilson for driving while intoxicated (DWI). From a pretrial order suppressing the evidence from the traffic stop, the State appeals. Because the trial court granted the motion to suppress based only on its finding that Wilson did not commit a traffic offense and expressly refused to consider the broader question of whether—based on the totality of the circumstances—Abbott had reasonable suspicion that Wilson was driving while intoxicated, we reverse the suppression order and remand this matter to the trial court for further proceedings consistent with this opinion.

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd).

2

While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 985 S.W.2d at 89.

At the hearing on the motion to suppress, Abbott testified that he was patrolling the streets at nighttime on Christmas when he observed Wilson in the parking lot of a local bar called the American Legion.[1] Wilson waited for another patrol car to pass him on the main road before exiting the bar parking lot. Abbott stated, "Once I saw [the other patrol car] pass in front of the vehicle, the driver immediately drove across Highway 56 into a closed" Chrysler dealership. Abbott interpreted Wilson's driving as an "evasive action," but opined that he did not have reasonable suspicion to stop Wilson for DWI at this point. Wilson remained situated in front of the Chrysler dealership until the other patrol car was out of view, "started kind of pulling forward and back, and then eventually just kind of went back out on the roadway and proceeded westbound on 56 out of town." Abbott followed Wilson, believed he observed a traffic violation, and initiated a traffic stop. When asked to summarize his reasons for stopping Wilson, Abbott

---

[1]Abbott later testified that he assumed Wilson came from the American Legion parking lot; his view of the parking lot was obstructed.

testified:

> Basically, . . . the totality of the circumstances was the driver leaving the bar and his behavior once he saw a patrol officer in the area to make quick evasive actions to go into a place of business that was closed, pretend like he was looking for the cars, which was—that I've seen several times during my ten years here in Bonham for like [sic] people who are possibly intoxicated. With those two things right there, with the traffic violation, is the reason I stopped the subject believing that he was possibly intoxicated.

The following exchange suggests confusion concerning whether the trial court could consider evidence other than the traffic violation:

> THE COURT: Let's hold up. Let me get down to the point that I'm going to have to rule on. The fact that he was apparently—or it appeared to be that he was pulling out of the American Legion is one factor that could be considered in reasonable suspicion. Is that what you're saying?
>
> [The State]: It is one of the circumstances that can be --
>
> THE COURT: The fact that he pulled across the road to the Chrysler dealership, possibly trying to avoid the police officer's vision who had just passed, is another factor in the reasonable --
>
> [The State]: Yes, in light of the fact that Bonham Chrysler was closed at the time.
>
> THE COURT: And my understanding of the law is that even if he said "ah-hah, there's a possible DWI. I'm going to stop him," that doesn't make any difference as long as there is a traffic violation or something that is dangerous to give him reasonable suspicion to stop the vehicle . . . . So then, the -- this motion to suppress is going to be based upon the driving of the defendant at the time.
>
> [The State]: No, Your Honor, it's actually based off of Corporal Abbott's testimony about the entire --

THE COURT:        No, taking the entirety into consideration --

[The State]:    Correct.

THE COURT:    -- if there's no traffic violation, even despite these other two factors, then there's no reason to stop him.   In other words, if he had driven –let's stay with the assumption that he did not violate any traffic laws, then there would be no reasonable suspicion to stop him.   Is that correct?

[The State]:    No, Your Honor, because Corporal Abbott actually testified as to why the defendant's actions were still unsafe . . . ."

After this discussion, the trial court reviewed the videotape, decided that no traffic violation had been committed, and granted the motion to suppress on that basis.  The following discussion ensued:

[Wilson's Attorney]:        May I ask the Court if the Court has found that there was reasonable suspicion, or is it correct in saying that the Court finds there was not reasonable suspicion to make a stop --

THE COURT:        I found there was not reasonable suspicion because there was no violation of the traffic laws.

[The State]:    Your Honor, that's not an issue --

THE COURT:        No, I didn't say that.   I said reasonable suspicion to stop the defendant.

[Wilson's Attorney]:  For any offense?

THE COURT:        For any offense.

[The State]:    For any traffic code violation?

THE COURT:        Any traffic violation.   That's what we're finding. That's the only thing we're ruling on at this time, is traffic code violations.

Whether he was intoxicated or not has no bearing on this ruling. Whether or not he intended to stop him for suspicion of DWI has very little or almost no bearing on this ruling.

[Wilson's Attorney]: I'm confused, Your Honor.

THE COURT: That's based upon this Aviles versus State where it says examining the validity of the traffic stop is immaterial but the officer had an ulterior motive for stopping. Whether or not he had reasonable suspicion to stop him for violating a traffic offense. If the Court of Appeals finds that my viewing of this video was incorrect, then they'll reverse me.

[Wilson's Attorney]: But, Judge, so --

THE COURT: I'm not going to find him guilty of DWI.

[Wilson's Attorney]: No, Your Honor, and maybe I'm not clear on what I'm requesting. I'm not asking the Court to rule as to whether he was intoxicated or not, or any level beyond a reasonable doubt. I'm asking the Court to rule as to whether the Officer has a suspicion to make a traffic stop based on driving -- the offense of driving while intoxicated. Because I submit to the Court that if an officer has in his mind specific clues to lead the Court to believe -- I'm sorry -- clues that lead to reasonable suspicion of driving while intoxicated, then the officer can make a lawful traffic stop. If the officer in his mind feels that he has reasonable suspicion of an intoxicated driver, I don't think -- I certainly don't think it was found in this case, but --

THE COURT: Well, there would have to be more articulable facts, like weaving or -- you know, within the lane of traffic or weaving between the lane of traffic, or failure to maintaining [sic] a single lane of traffic in a dangerous manner. Just failing to maintain a single lane of traffic in a safe manner is not reason to stop somebody. But failing to maintain -- you know, there would have to [be] some other facts. I'm not ready to make a ruling on this. Before we make -- sign these rulings, if you'll submit to me some type of law where I need to make that ruling, I'll do it. But I don't think that's proper in this case. The only thing at this time is that we're dealing with is reasonable suspicion to stop him. If he didn't have reasonable suspicion to stop him, then all the evidence that he gather[ed] in this stop is inadmissible . . . . The only thing that he did wrong was these two

6

violations. He drove on the shoulder -- what do they call it, fog line? Is that what they call it?

 [The State]: The white line.

 THE COURT: And I didn't see it. And then you get to the point, was it dangerous to do so.

 [The State]: Your Honor, actually the danger only applies to section 545.060. There is no danger requirement in 545.058.

 THE COURT: That is probably correct. But if the -- well, there's no need. I've made my ruling.

From this discussion, it appears the trial court believed the officer could not stop Wilson unless a traffic violation was committed. In fact, the trial court's conclusions of law state, "This Court refused to make a ruling or finding on whether or not there was reasonable suspicion to stop Defendant for Driving While Intoxicated."

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. This prohibition extends to "brief investigatory stops such as the stop of [a] vehicle." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To initiate an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that, in light of the officer's experience

7

and general knowledge, would lead the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). These facts must be more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

An investigative stop must be objectively reasonable in light of the particular circumstances of the case. *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Terry*, 392 U.S. at 21–22; *Corbin*, 85 S.W.3d at 276. Whether the officer's suspicion was reasonable is evaluated based on "an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). It should also be based on the totality of the circumstances. *See Derichsweiler v. State*, No. PD-0176-10, 2011 WL 255299, at *4 (Tex. Crim. App. Jan. 26, 2011).

The Texas Court of Criminal Appeals recently clarified that the test for reasonable suspicion does not require the facts to point to the actual or impending commission of a particular Penal Code offense. *Id.* at *5. That court explained:

> Unlike the case with probable cause to justify an arrest, it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction. The reason is simple but fundamental. A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest . . . . [T]he requirement that there be "some indication that the unusual activity is related to crime" does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent. It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and

8

> reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing.

*Id.* at *6. More recently than that, our high criminal court reasserted that the totality of the circumstances need not even point to only criminal conduct:

> The possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct. Indeed, the principal function of [an] investigation is to resolve that very ambiguity . . . .

*State v. Castleberry*, No. PD-0354-10, 2011 WL 709697, at *6 (Tex. Crim. App. Mar. 02, 2011) (quoting *Woods v. State*, 956 S.W.2d 33, 37 (Tex. Crim. App. 1997)).

Although the question of whether Abbott had reasonable suspicion that Wilson was driving while intoxicated was before the trial court, it refused to rule on the issue. Instead, the trial court appears to have believed that Wilson was required to commit a traffic violation in order for the officer to have reasonable suspicion. This is not the law. An officer is justified in stopping a driver based on a reasonable suspicion of DWI, even in the absence of a traffic violation. *James v. State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (even if defendant's driving did not constitute traffic violation, it provided reasonable suspicion defendant was driving while intoxicated).

We reverse the trial court's judgment so that it may rule on the issue of whether Abbott had reasonable suspicion to stop Wilson for DWI.   We reverse the judgment and remand to the trial court for proceedings consistent with this opinion.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 16, 2011
Date Decided:       March 29, 2011

Do Not Publish